IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BMO HARRIS BANK N.A., | |
| Plaintiff, | No. 23-cv-02656 |
| v. | Judge John F. Kness |
| EA EXPRESS LLC, and MARINGLEN CAMAJ | |
| Defendants. | |

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**

Plaintiff's motion for default judgment (Dkt. 21) is granted. Final judgment is entered in favor of Plaintiff BMO Harris Bank N.A. See accompanying Statement for details. Enter separate final judgment order. Civil case terminated.

**STATEMENT**

**Background**

Plaintiff BMO Harris Bank, N.A. filed this action against Defendants EA Express LLC and Maringlen Camaj on April 27, 2023, bringing an action for breach of contract to (1) recover the unpaid balance and accrued interest of three loans, and (2) immediately possess the collateral. (Dkt. 1.)

On August 18, 2023, Plaintiff moved for entry of default under Rule 55(a) of the Federal Rules of Civil Procedure. (Dkt. 16.) Because Defendant never appeared through counsel and did not answer or otherwise plead, the Court entered default against Defendant on August 25, 2023. (Dkt. 18.) Plaintiff has served copies of the Court's default order and Plaintiff's motion for default judgment on Defendant by various methods. (Dkt. 19.) As of the date of this Order, Defendant has not appeared in this action through counsel and has not responded to the motion for default judgment.

**Legal Standard for Entry of Default and Default Judgment**

Rule 12(a) of the Federal Rules of Civil Procedure generally requires a defendant to file an answer within 21 days after the service of the summons and complaint. The failure to do so may result in the defendant's default under Rule 55(a). When a party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). An entry of default must precede a default judgment. *See* Fed. R. Civ. P. 55(b). Upon the entry of default, the "well-pled allegations of the complaint relating to liability are taken as true . . . ." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012) (citing *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Entry of default judgment is then left to the sound discretion of the district court. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1322 (7th Cir. 1983); *see also C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1206 (7th Cir. 1984). Although default judgment is a harsh result and the law favors trials on the merits, these considerations must be balanced against the need to promote efficient litigation and to protect the interests of all litigants. *Id.*

**Liability of Defendants**

Defendants failed to file a valid answer within 21 days of service of the complaint. As a result, the Court must accept as true the well-pleaded allegations of Plaintiff's complaint concerning liability. *Wehrs*, 688 F.3d at 892.

Plaintiff brings an action against Defendants to recover loan payments under three Loan and Security Agreements. (Dkt. 1 ¶ 44.) Plaintiff BMO Harris Bank N.A. is a national banking association. (*Id.* ¶ 1.) Defendant EA Express LLC is a limited liability company and the borrower of the loans (the "Borrower"). (*Id.* ¶ 2.) Defendant Maringlin Camaj is the sole member of Borrower and the guarantor of the loans (the "Guarantor"). (*Id.* ¶ 2–3.) Plaintiff and Borrower entered into three Loan and Security Agreements (*Id.* ¶ 10–13.) The first Loan and Security Agreement (the "First Agreement") was executed and guaranteed on January 25, 2022 for an amount of $224,604.48. (*Id.* ¶¶ 10, 15, Ex. A.) The second Loan and Security Agreement (the "Second Agreement") was executed and guaranteed on March 17, 2022 for an amount of $450,844.20. (*Id.* ¶¶ 11, 15, Ex. B.) The third Loan and Security Agreement (the "Third Agreement") (together, the "Agreements") was executed and guaranteed on April 1, 2022 for an amount of $224,187. (*Id.* ¶¶ 12, 15, Ex. C.) The Agreements were secured by a first-priority security interest in various tractors and trailers (the "Collateral"). (*Id.* ¶ 13.) The First Agreement was secured with a first-priority security interest in one 2020 Volvo Tractor. (*Id.* ¶ 13, Ex. A.) The Second Agreement

was secured with a first-priority security interest in six 2023 MAC trailers. (*Id.* ¶ 13, Ex. B.) The Third Agreement was secured with a first-priority security interest in three 2023 MAC trailers. (*Id.* ¶ 13, Ex. C.)

The Agreements are governed by Illinois law. (*Id.* ¶ 16.) The Agreements provide that Borrower's failure to pay any amount due constitutes a default. (*Id.* ¶ 17.) Defendants have failed to make monthly payments on the Agreements beginning in February 2023. (*Id.* ¶ 21.) Pursuant to the terms of the Agreements, the amounts due have been accelerated. (*Id.* ¶ 22.) The Agreements also require Borrower to pay interest of 1.5% per month on unpaid amounts, any late charges and fees, and attorneys' fees and costs Plaintiff incurs in enforcing its rights under the Agreements. (*Id.* ¶¶ 23–24, 26.) Subsequent to acceleration, Defendant made several payments on the Agreements: (1) $7,373.63 on the Second Agreement on or about March 27, 2023; (2) $2,626.37 on the Third Agreement on or about March 27, 2023; (3) $1,889.92 on the First Agreement on or about March 31, 2023; (4) $1,110.08 on the Third Agreement on or about March 31, 2023; (5) $2,789.34 on the First Agreement on or about April 21, 2023; (6) $1,210.66 on the Second Agreement on or about April 21, 2023; (7) $10,000 on the Second Agreement on or about May 5, 2023; and (8) $1,000 on the First Agreement on or about June 30, 2023. (Dkt. 21 at 6–7.) As of August 22, 2023, Defendants have failed to make any additional payments on amounts due and owing under the Agreements. (*Id.* at 6.)

The Agreements also entitle Plaintiff to remove and repossess the Collateral in the event of default. (Dkt. 1 ¶ 27, Exs. A–C.) Defendants are obligated to pay any expenses incurred by Plaintiff to retake, hold, prepare for sale, and sell the Collateral. (*Id.* ¶ 25.) Borrower has failed to return possession of all Collateral to Plaintiff. (*Id.* ¶ 35.) Prior to filing this lawsuit, Plaintiff recovered one 2023 MAC trailer (VIN: 5MAPS5320PN067528). (*Id.* ¶ 36.) Plaintiff received $64,500 in proceeds from the sale of this unit of collateral on or about August 21, 2023, an amount credited toward Defendants' outstanding debt. (Dkt. 21 at 7.) After filing this lawsuit, Plaintiff also recovered the 2020 Volvo tractor (VIN: 4V4NC9EH5LN265802) and a 2023 MAC trailer (VIN: 5MAPS5329PN067527). (*Id.* at 4.) Seven units of Collateral remain uncollected (the "Retained Collateral"), consisting of the following vehicles:

| Agmt. | Year | Make | Model | Desc. | VIN |
|---|---|---|---|---|---|
| Second | 2023 | MAC | Conestoga | Trailer | 5MAPS5321PN067523 |
| | 2023 | MAC | Conestoga | Trailer | 5MAPS5323PN067524 |
| | 2023 | MAC | Conestoga | Trailer | 5MAPS5325PN067525 |
| | 2023 | MAC | Conestoga | Trailer | 5MAPS5327PN067526 |
| | 2023 | MAC | Conestoga | Trailer | 5MAPS532XPN067522 |
| Third | 2023 | MAC | Conestoga | Trailer | 5MAPS5322PN067529 |
| | 2023 | MAC | Conestoga | Trailer | 5MAPS5328PN067521 |

As of September 8, 2023, the amounts due on the Agreements (including principal and accrued interest) are as follows: (1) $156,201.77 on the First Agreement; (2) $336,996.05 on the Second Agreement; and (3) $113,719.94 on the Third Agreement. (Dkt. 21-1 at Sch. 1.) The total amount due and owing under the Agreements is $606,917.76. Defendants also owe pre-judgment interest at an amount of $287.48 per day from September 9, 2023 until November 28, 2023, the date of this Order. (*Id.* at 6.) Plaintiff seeks an order (1) granting default judgment in its favor; (2) awarding monetary damages of $606,917.76 plus interest; (3) ordering possession of the Retained Collateral; (4) ordering Borrower to specifically perform by surrendering the Retained Collateral; (5) entering injunctive relief causing the surrender and repossession of the Retained Collateral; and (6) any further relief as is just and proper. (*Id.* at 15.)

**Damages**

Upon default, the "well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Wehrs*, 688 F.3d at 892 (citing *Di Mucci*, 879 F.2d at 1497); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to: . . . determine the amount of damages . . . ." Fed. R. Civ. P. 55(b)(2). A default judgment "may not be entered without a hearing on damages unless the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *DiMucci*, 879 F.2d at 1497.

Plaintiff seeks $606,917.76 in contractual damages, comprised of $574,951.59 of unpaid principal and $31,966.17 of accrued interest on the Agreements as of September 8, 2023. (Dkt. 21 at 2). Plaintiff also seeks additional accrued interest of $287.48 per day for every day the amounts remain unpaid after September 8, 2023. (Dkt. 21 at 2.) Plaintiff provides a declaration from Micki Koepke, Plaintiff's Litigation Team Lead, to support the alleged damages amount (the "Koepke Declaration"). (Dkt. 21-1.) Attached to the Koepke Declaration are copies of the three Agreements (Exs. A–C) and a summary of Plaintiff's business records specifying the amount of outstanding principal, accrued interest, and fees incurred under the Agreements upon acceleration (Sch. 1).

The Koepke Declaration supports that as of September 8, 2023, the outstanding principal on the Agreements are as follows: (1) $144,719.08 on the First Agreement; (2) $317,471.03 on the Second Agreement; and (3) $112,761.48 on the Third Agreement. (Dkt. 21-1 at Sch. 1.) The total outstanding principal for all three Agreements is thus $574,951.59. The accrued interest on the outstanding principal

4

amounts is calculated from the date of acceleration (March 23, 2023) through September 8, 2023. Under the Agreements, upon acceleration, Borrower is obligated to pay interest on all unpaid amounts at a rate of 1.5% per month, or the maximum rate not prohibited by applicable law. (Dkt. 21 at Exs. A–C.) The Koepke Declaration supports that the total amount of accrued interest on the Agreements from acceleration through September 8, 2023 is as follows: (1) $11,482.69 on the First Agreement; (2) $19,525.02 on the Second Agreement; and (3) $958.46 on the Third Agreement. (*Id.*) The total amount of accrued interest is thus $31,966.17. Together, the outstanding accelerated principal plus accrued interest through September 8, 2023 is $606,917.76 ($574,951.59 + $31,966.17). (Dkt. 21 at 6.)

After Plaintiff's motion for default judgment was filed, interest continued to accrue on the Agreements. The daily interest amounts for the three Agreements are as follows: (1) $72.36 on the First Agreement; (2) $158.74 on the Second Agreement; and (3) $56.38 on the Third Agreement. (Dkt. 21-1 at Sch. 1.) Thus, together, the total amount of interest that accrues per day on the Agreements is $287.48. Defendants are obligated to pay this amount of accrued interest multiplied by the number of days from September 9, 2023 through November 28, 2023, the date of this Order. That is 81 days, which means that interest has accrued in the amount of $23,285.88.

Because the contractual damages sought by Plaintiff are capable of ascertainment from the documentary evidence and the Koepke Declaration, the Court finds that Plaintiff is entitled to $606,917.76 plus pre-judgment interest of $22,998.40. Plaintiff is also entitled to post-judgment interest in the amount of $287.48 per day. In the event that Plaintiff has recovered proceeds from the sale or disposition of Collateral or has received any additional payments since September 8, 2023, Plaintiff must apply those proceeds or payments to the amount of this judgment.

**Repossession of Collateral**

In addition to monetary damages, Plaintiff seeks an order of possession granting Plaintiff immediate possession of the Retained Collateral. (Dkt. 21 at 2.) Under Illinois law, a party may bring an action of replevin for the recovery of goods or chattels that have been wrongfully detained. 735 ILCS 5/19-101. Replevin is a "strict statutory proceeding, and the statute must be followed precisely." *Carroll v. Curry*, 912 N.E.2d 272, 274–75 (Ill. App. Ct. 2009). A complaint for an action of replevin must contain a description of the property to be replevied, and a statement that (1) the plaintiff is the owner of the property and lawfully entitled to possession of the property; (2) the property is wrongfully detained by the defendant; and (3) the property has not been taken for any tax, assessment, or fine levied, nor seized under any lawful process, nor held under any other order for replevin. 735 ILCS 5/19-104. Before a court enters an order for replevin or the seizure of property, the defendant

5

must be given notice and a hearing to contest the entry of an order for replevin. 735 ILCS 5/19-105. The court then must conduct a hearing to review the plaintiff's claim to possession. 735 ILCS 5/19-107. A defendant's failure, however, to oppose a replevin claim "with any affirmative material contradicting or otherwise contesting plaintiff's assertions" means that the plaintiff is entitled to judgment as a matter of law for replevin. *RBS Citizens, N.A. v. Ramzanali*, 2011 WL 2565941, at *5 (N.D. Ill. June 29, 2011); *see also Ctr. Cap. Corp. v. Burmac Metal Finishing Co.*, 2002 WL 1874823, at *1 (N.D. Ill. Aug. 13, 2002).

Plaintiff's motion for default judgment supports its right to immediate possession of the Retained Collateral. Plaintiff's complaint contains a description of the property to be replevied. (Dkt. 1 ¶¶ 13, 36.) Plaintiff's complaint also contains all required statements. First, Plaintiff is the owner of the Retained Collateral pursuant to the Agreements, because Plaintiff holds a security interest in the Retained Collateral that becomes possessory upon acceleration. (Dkt 21-1 ¶¶ 13–14, 39; Dkt. 21-1 at Exs. A–C.) Second, the Retained Collateral is wrongfully detained by Borrower, who has failed to comply with Plaintiff's rightful demand for possession of the Retained Collateral. (Dkt. 1 ¶ 63.) Third, the Retained Collateral has not been taken for any tax, assessment, fine, or any other lawful process or other replevin against Plaintiff. (*Id.* ¶ 54; Dkt. 21-1 ¶ 38.) These facts are undisputed and uncontested by Defendants, who have failed to appear or otherwise respond. As such, Plaintiff is entitled to judgment as a matter of law for replevin. *See RBS Citizens*, 2011 WL 2565941, at *5.

**Specific Performance and Permanent Injunction**

Plaintiff is unaware of the location of the Retained Collateral, so it seeks to assert its right under the Agreements to require Defendants to assemble the Retained Collateral and deliver it to Plaintiff. (Dkt. 21 at 11, Exs. A–C.) *See also* 810 ILCS 5/9-609 ("[A] secured party may require the debtor to assemble the collateral and make it available to the secured party . . ."). Plaintiff seeks an order of specific performance and a permanent injunction to effectuate this right. (*Id.* at 11.)

A party seeking a permanent injunction must meet four elements: "(1) [T]hat it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted). Plaintiff has met each of these elements. First, Plaintiff has suffered and continues to suffer irreparable harm so long as the Retained Collateral depreciates and deteriorates while in Borrower's possession. Second, legal remedies are inadequate because without injunctive relief, the order of possession would likely

6

be unenforceable, and Plaintiff would be at risk of a multiplicity of lawsuits. Third, the balance of hardships favors Plaintiff, who has the contractual right to payment of the Agreements and possession of the Retained Collateral. Fourth, the public interest favors the enforcement of contracts, an interest that is served by granting the permanent injunction. Accordingly, this Court orders Borrower to specifically perform under the Agreements by surrendering the Retained Collateral to Plaintiff, and enters injunctive relief in favor of Plaintiff causing the surrender or repossession of the Retained Collateral.

An Order of Possession is therefore entered in favor of Plaintiff and against Borrower as follows:

- Plaintiff is lawfully entitled to immediate possession of the Retained Collateral;

- Borrower and any of its responsible managing agents, officers, directors, or employees, including specifically Guarantor, and any person or entity in active concert or participation with Borrower having actual notice of this Order by personal service or otherwise, is hereby enjoined and restrained as follows: (i) from transporting, using, pledging, selling, transferring, or disposing of the Retained Collateral either in the operation of the business of Borrower or otherwise, except as may be necessary to move or transport the Retained Collateral in order to comply with this Order; and (ii) restricting, limiting, or conditioning either the access of Plaintiff to the Retained Collateral, or Plaintiff's ability to take possession of the Retained Collateral;

- Borrower and any of its responsible managing agents, officers, directors, or employees, including specifically Guarantor and any person or entity in active concert or participation with Borrower having actual notice of this Order by personal service or otherwise, are hereby required to: (i) contact Plaintiff's representative Nolan Broadie (by phone at (319) 832-3512, or by e-mail at nolan.broadie@bmo.com) by the end of the next business day after receiving notice of this Order and disclose the precise location of the Retained Collateral; and (ii) by the end of the second business day after receiving notice of this Order, surrender the Retained Collateral in its possession, custody, or control to Plaintiff at one or more locations to be designated by Plaintiff and take all actions necessary to allow Plaintiff to obtain access to and possession of the Retained Collateral, including terminating subleases, if any, and obtaining the Retained Collateral from any third parties who may have possession, custody, or control over the Retained Collateral;

- Borrower shall immediately notify all of its responsible managing agents, officers, directors, and employees of the entry of this Order.

**Attorneys' Fees and Costs**

The Agreements obligate Defendants to pay for "the reasonable fees of any attorneys retained" incurred by Plaintiff in enforcing its rights under the Agreements. (Dkt. 1 at Exs. A–C.) Rule 54(d)(2)(B)(i) of the Federal Rules of Civil Procedure requires that a motion for attorneys' fees and costs be filed "no later than 14 days after the entry of judgment." Fed. R. Civ. Pro. 54(d)(2)(B)(i). Plaintiff has incurred attorneys' fees and costs in prosecuting this matter. (Dkt. 21 at 6.) Plaintiff requests that the deadline to file a motion in support of the attorneys' fees and costs be stayed, as Plaintiff anticipates incurring additional fees until Plaintiff is able to recover the Retained Collateral. (*Id.*) Accordingly, Plaintiff's request for a stay of the 14-day filing period is granted, and the deadline is stayed until Plaintiff recovers the Retained Collateral. *See, e.g.*, *BMO Harris Bank N.A. v. Basnight*, No. 19-cv-14, 2019 WL 3949305 (E.D. Va. Aug. 21, 2019); *BMO Harris Bank NA v. Boston Trucking, LLC*, No. 17-CV-72, 2017 WL 7725251 (E.D.N.C. Dec. 11, 2017); *BMO Harris Bank N.A. v. Miller Transportation LLC*, No. C20-148, 2020 WL 8617407 (W.D. Wash. June 24, 2020); *BMO Harris Bank N.A. v. Miller Transportation LLC*, No. C20-148, 2021 WL 1740814 (W.D. Wash. Mar. 11, 2021).

**Conclusion**

For the reasons stated above, Plaintiff's motion for default judgment (Dkt. 21) is granted. Plaintiff is entitled to $606,917.76 plus pre-judgment interest totaling $23,285.88. Plaintiff is also entitled to post-judgment interest of $287.48 per day. Plaintiff is entitled to judgment as a matter of law for replevin. An Order of Possession and permanent injunction is entered in favor of Plaintiff and against Defendants. The 14-day filing period for a motion requesting attorneys' fees is stayed. Plaintiff shall credit the net proceeds of any disposition of Collateral to the judgment amount.

SO ORDERED in No. 23-cv-02656.

Date: November 28, 2023

JOHN F. KNESS
United States District Judge

8